**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FLOCAST, LLC,**

                                        **Plaintiff,**

    **vs.**

                                                    **6:23-CV-1174**
                                                    **(MAD/TWD)**

**MOVI FAMILY, LLC,**

                                        **Defendant.**
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **ROTHWELL, FIGG, ERNST &** **MANBECK, P.C.** | **JEFFREY A. LINDENBAUM, ESQ.** |
| The Holyoke-Manhattan Building 80 South Highland Avenue Ossining, New York 10562 Attorneys for Plaintiff | |
| **ROTHWELL, FIGG, ERNST &** **MANBECK, P.C.** | **LEO M. LOUGHLIN, ESQ.** **MICHAEL V. BATTAGLIA, ESQ.** **RICHARD WYDEVEN, ESQ.** |
| 901 New York Avenue, N.W. Suite 900 East Washington, District of Columbia 20001 Attorneys for Plaintiff | |
| **HECHT PARTNERS, LLP** | **DAVID HECHT, ESQ.** |
| 125 Park Avenue 25th Floor New York, New York 10017 Attorneys for Defendant | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On September 13, 2023, Plaintiff Flocast, LLC ("Plaintiff") commenced this action against Defendant Movi Family, LLC ("Defendant"), alleging that Defendant's Movi Cocoon diaper changing pad (the "Cocoon") infringes Plaintiff's U.S. Design Patent No. D714,072 (the "072 Patent") and uses the alleged trade dress of its Keekaroo Peanut diaper changing pad (the "Keekaroo"). *See* Dkt. No. 1. Plaintiff seeks injunctive relief and monetary damages for Defendant's alleged infringement of Plaintiff's rights to the Keekaroo Trade Dress described herein and the '072 Patent, advancing claims under both federal and New York State law. Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's claims. *See* Dkt. Nos. 24, 33. Plaintiff opposes Defendant's motion. *See* Dkt. No. 30. On May 17, 2023, the Court held oral argument on the motion. *See* Dkt. No. 34.

## II. BACKGROUND

### A.    Factual Background

The complaint alleges the facts as follow, which the Court accepts as true for the purposes of deciding this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is a limited liability company which sells diaper changing pads, including the Keekaroo. *See* Dkt. No. 1 at ¶ 2. Plaintiff is organized in the state of New York, and has its principal place of business in Dolgeville, New York. *See id.* at ¶ 6. Defendant is a company that sells and markets the Movi Cocoon and is located in Pasadena, California. *See id.* at ¶¶ 4, 7.

On September 9, 2014, the United States Patent and Trademark Office issued the '072 Patent to Plaintiff. *See id.* at ¶ 14. The rights of the design in the '072 Patent were duly assigned to Plaintiff. *See id.* The design in the '072 Patent includes rounded indents in the middle portion of the changing pad, rounded ends, a top surface that is elevated at one end, and raised edges along the length and one end of the pad. *See id.* at ¶ 15. The '072 Patent is embodied by the

2

Keekaroo changing pad. *See id.* at ¶ 16. "The '072 Patent is associated with extremely high-quality diaper changing pad products and obtained incredible recognition in the market, including the highest level of JMPA Certification and Babylist Best." *Id.* at ¶ 17. The complaint incorporates by reference the Patent design, including the below depiction which shows the '072 Patent design for the bottom of the pad.



FIG. 7

Dkt. No. 1-1 at 9. The depiction below shows the side design from the '072 Patent.



FIG. 5

Dkt. No. 1-1 at 7. The depiction below shows the front of the claimed design and an oval indicating the placement of a logo.



FIG. 3

Dkt. No. 1-1 at 5.

Plaintiff also promotes its Keekaroo Trade Dress "in connection with the sales of its Keekaroo Peanut changing pad." Dkt. No. 1 at ¶ 18. The Keekaroo Trade Dress "has come to be associated exclusively with Plaintiff" and has "acquired distinctiveness and secondary meaning because of Plaintiff's extensive advertising" and product reviews. *See id.* at ¶ 3. Plaintiff claims that the Keekaroo Trade Dress is commercially successful, that Plaintiff is regarded as "one of the premier manufacturers of changing pads," and that the Keekaroo Trade Dress represents "high quality, integrity, authenticity, and good will in the United States and is associated exclusively with Plaintiff." *Id.* at ¶ 20. Plaintiff has "spent a considerable sum on promoting" and advertising the Keekaroo Trade Dress across multiple platforms. *Id.* at ¶ 24. The Keekaroo Trade Dress "is renowned in the relevant market as a result of the extensive advertising, promotion, and sales over the past decade" and "is distinctive since it has acquired secondary meaning among the relevant public and audience for diaper changing pads, as seen by the volume of Plaintiff's sales and advertising, as well as the length of time Plaintiff has been the exclusive seller of products featuring" the Keekaroo Trade Dress. *Id.* at ¶¶ 21, 27. Plaintiff has invested in promoting the Keekaroo Trade Dress by advertising the Keekaroo on streaming platforms and engaging in digital marketing, including on social media platforms, as well as on its own website and social media pages. *See id.* at ¶¶ 22-24.

The complaint alleges the Keekaroo Trade Dress includes nonfunctional features which are not essential to the purpose, cost, or quality, of the changing pad. *See id.* at ¶ 28.

The [Keekaroo] Trade Dress comprises, among other things:

a. a middle portion indented on both sides of the diaper changing pad such that the middle portion is narrower than the end portions of the changing pad;

4

b. rounded end portions on opposite sides of the indented middle portion;

c. an elevated top surface at one end portion relative to the top surface of the opposite end portion;

d. raised edges along the sides and one end portion of the changing pad; and

e. a grey or vanilla color throughout.

*Id.* at ¶ 2.  Plaintiff's visual diagram of the Keekaroo Trade Dress is shown below:



*Id.* at ¶ 3.

Defendant designed and manufactured the Movi Cocoon, and since at least June 2023, has imported, transported, distributed, advertised, and sold it in the United States.  *See id.* at ¶¶ 29, 31, 34.  Plaintiff alleges "Defendant knew or had reason to know" that the Movi Cocoon "directly infringed on the '072 Patent[.]"  *Id.* at ¶ 32.  Images of the allegedly infringing Movi Cocoon and Plaintiff's '072 Patent for comparison, identified by Plaintiff's briefing, are displayed below:



| INFRINGING MOVI COCOON | FIG. 1<br>U.S. Design Patent 714,072 |

*Id.* at ¶ 36.

Plaintiff claims that the '072 Patent and the Movi Cocoon are "so similar that they are nearly indistinguishable[.]"  *Id.*  Plaintiff alleges that the Movi Cocoon has "the same overall appearance as the '072 Patent" and is specifically similar to the '072 patent in regard to the following features:

> [(1)] a middle portion that is indented on both sides such that the middle portion is narrower than the end portions of the changing pad designs; [(2)] rounded end portions on opposite side of the indented middle portion; [(3)] an elevated top surface at one end portion relative to the top surface of the opposite end portion; and [(4)] raised edges along the sides and one end portion of the changing pad.

*Id.* at ¶ 37.  Plaintiff alleges that, even though the Movi Cocoon has a Movi logo on the bottom of the changing pad, whereas the '072 Patent does not, the designs are "substantially the same nonetheless" because the bottom of the changing pad is "not visible at the time of purchase," is functional, and is "not part of the design of the '072 Patent."  *Id.* at ¶ 38.  Plaintiff also alleges that "there is no prior art that has the same overall appearance as the '072 Patent."  *Id.* at ¶ 39.

"Defendant is not licensed by Plaintiff and is not authorized by Plaintiff to use the [Keekaroo] Trade Dress." *Id.* at ¶ 40. Plaintiff claims that the Keekaroo Trade Dress had "achieved secondary meaning in the marketplace" before Defendant began selling the Movi Cocoon. *Id.* at ¶ 41. On March 23, 2023, Plaintiff sent Defendant a cease and desist letter informing Defendant of the alleged infringement. *See id.* at ¶ 42. Plaintiff alleges that confusion between the Keekaroo Trade Dress and the Movi Cocoon is "not simply likely, but inevitable" because "no other changing pad in U.S. commerce features the characteristics typical of the [Keekaroo] Trade Dress," the two have the "same purpose" and that the "lesser quality" of the Movi Cocoon damages Plaintiff's reputation. *Id.* at ¶¶ 44, 46.

Based on the alleged similarities between the '072 Patent design and the Movi Cocoon, as well as the Keekaroo and the Movi Cocoon, Plaintiff brings claims for (1) direct infringement of the '072 Patent under 35 U.S.C. §§ 271(a), 281-285, and 289; (2) indirect infringement of the '072 Patent in violation of 25 U.S.C. § 271(b); (3) violation of its rights in the trade dress of its Keekaroo Peanut Changing Pad (the "Keekaroo Trade Dress") under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement and unfair competition under New York Law; and (5) injury to business reputation under N.Y. Gen. Bus. Law § 360-l. *See id.* at ¶¶ 51-91.

In its complaint, Plaintiff seeks "a complete accounting of all revenue and profits derived by Defendant from the unlawful conduct alleged herein, including without limitation, Defendant's total profit from the manufacture, use, sale, and offer to sell the INFRINGING MOVI COCOON pursuant to 35 U.S.C. § 289." *Id.* at ¶ 59. Plaintiff also seeks "an award of reasonable attorney's fees pursuant to 35 U.S.C. § 285" and injunctive relief. *Id.* at ¶¶ 60-61.

### III. DISCUSSION

7

**A.      Legal Standards**

***1. Motion to Dismiss***

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Iqbal*, 556 U.S. at 678 (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face."  *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

"A court may also consider documents incorporated by reference in the complaint as well as documents the plaintiff either had in the plaintiff's possession or had knowledge of and upon which the plaintiff relied in bringing suit." *Pablo Chavez v. Brit. Broad. Corp.*, No. 17-CV-9572, 2019 WL 2250446, *2 (S.D.N.Y. May 23, 2019) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

### 2. Direct Infringement

35 U.S.C. § 271(a) creates liability for direct patent infringement and provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). The United States Court of Appeals, Federal Circuit has set forth five pleading elements for patent infringement claims: a plaintiff must "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)).

"Under 35 U.S.C. § 289, whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design . . . to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit." *Evriholder*

*Prod. LLC v. Simply LBS Ltd. Co.*, No. 17-CV-4329, 2020 WL 7060336, *5 (S.D.N.Y. Apr. 21, 2020) (internal quotation omitted and alterations adopted).  "Under 35 U.S.C. § 285, courts may also award 'reasonable attorney fees to the prevailing party,' though only in 'exceptional cases.'  In every case, '[t]he patent owner bears the burden of proving the amount of damages.'"  *Id.* (quoting *ALAN Sportartikel GmbH v. Ultra Fitness Equip., Inc.*, No. 09-CV-4909, 2011 WL 13305254, *2 (E.D.N.Y. Feb. 10, 2011)) (other quotation omitted).

### 3. Indirect Infringement

Subsection 271(b) creates liability for induced infringement and provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "Induced infringement under 35 U.S.C. § 271(b) requires . . . proof that (1) 'the defendant knew of the patent,' (2) the defendant knew . . . that 'the induced acts constitute patent infringement,' and (3) the defendant 'possessed specific intent to encourage another's infringement.'"  *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm.*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (quoting *Sanofi, LLC v. Watson Lab'ys Inc.*, 875 F.3d 636, 643-44 (Fed. Cir. 2017)).  "Evidence of active steps taken to encourage direct infringement such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe."  *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1333-34 (Fed. Cir. 2021) (quoting *Metro-Goldwyn Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

### 4. Section 43(a) of the Lanham Act

"Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994), creates a federal cause of action for trade dress infringement."  *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) (citation omitted).  Trade dress is the "total image and overall appearance . . . as defined by its overall composition and design," it "involves the total image of a product and may

include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (internal quotations and citation omitted).  "Trade dress is registrable as a trademark if it serves the same source-identifying function as a trademark . . . upon a showing of inherent distinctiveness.  And if not inherently distinctive, marks may be protectable if they acquire distinctiveness, i.e., if they 'become distinctive of the applicant's goods in commerce.'" *In re Forney Indus., Inc.*, 955 F.3d 940, 945 (Fed. Cir. 2020) (quoting 15 U.S.C. § 1052(e), (f)).

> [T]o establish a claim for trademark infringement under Section 43
> of the Lanham Act, "a plaintiff must establish that (1) [it] has a
> valid mark that is entitled to protection under the Lanham Act; and
> that (2) the defendant used the mark, (3) in commerce, (4) in
> connection with the sale . . . or advertising of goods or services, (5),
> without the plaintiff's consent."

*Pablo Chavez*, 2019 WL 2250446 at *4, 6 (quoting *1-800 Contacts v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005)); *accord Nat'l Lighting Co. v. Bridge Metal Indus.*, LLC, 601 F. Supp. 2d 556, 561 (S.D.N.Y. 2009).  A plaintiff must further show "that defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff]." *1-800 Contacts*, 414 F.3d at 407 (internal quotation marks omitted).

"[C]ourts in this Circuit typically do not conduct a full analysis into the question of 'likelihood of confusion' at the motion to dismiss stage due to its fact-intensive nature." *CDC Newburgh Inc. v. STM Bags, LLC*, No. 22-CV-1597, 2023 WL 6066136, *14 (S.D.N.Y. Sept. 18, 2023) (quoting *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 303 (E.D.N.Y. 2014)); *see also Van Praagh*, 993 F. Supp. 2d at 303 ("[L]ikelihood of confusion is a fact-intensive analysis that

ordinarily does not lend itself to a motion to dismiss") (quoting *The Name LLC v. Arias*, No. 10-CV-3212, 2010 WL 4642456, *5 (S.D.N.Y. Nov. 16, 2010)) (other citations omitted).[1]

### 5. *Common Law Trademark Infringement and Unfair Competition*

"Under New York common law, the standards for trademark infringement and unfair competition are 'virtually identical' to the standard under the Lanham Act, 'except that [New York law] requires an additional showing of bad faith.'" *CDC Newburgh Inc.*, 2023 WL 6066136 at *13 (quoting *Lopez v. Adidas Am., Inc.*, No. 19-CV-7631, 2020 WL 2539116, *15 (S.D.N.Y. May 19, 2020)) (other quotation and citation omitted); *see also Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005). However, "[n]ot every act, even if taken in bad faith, constitutes unfair competition." *Computer Associates, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (holding that a plaintiff must show more than commercial unfairness). "The tort is not all–encompassing . . .; the New York Court of Appeals in rejecting the notion that unfair competition is equivalent to the amorphous term commercial unfairness has stated that misappropriation of another's commercial advantage is a cornerstone of the tort." *Id.* (internal quotation marks and citations omitted). To act in "bad faith," one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Ins. Co.*, 30 A.D.3d 474, 820 (2d Dep't 2006).

### 6. *Injury to Business Reputation under N.Y. Gen. Bus. Law § 360-l*

"New York law provides that a '[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief . . .

---

[1] Applying the same standard for likelihood of confusion — also referred to as false designation of origin — to claims under Section 43(a) of the Lanham Act and trademark infringement claims under Section 32. *See id.* (quoting *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002)).

notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 113-14 (2d Cir. 2009) (quoting N.Y. Gen. Bus. Law § 360-l).  "In order to establish a dilution claim, two elements must be shown: (1) ownership of a distinctive mark, and (2) a likelihood of dilution." *Hormel Foods Corp. v. Jim Henson Prods.*, *Inc.*, 73 F.3d 497, 506 (2d Cir. 1996); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006) (distinguishing the federal dilution standard, which "requires a showing of actual dilution" from the New York standard, which only "requires a showing of a mere likelihood of dilution") (quotations and citations omitted).

Section 360-l of the New York General Business Law "provides for protection against both dilution by blurring and tarnishment[,] . . . [and] does not require a mark to be 'famous' for protection against dilution to apply." *Starbucks*, 588 F.3d at 114.  However, "New York law does not permit a dilution claim unless the marks are 'substantially' similar." *Id.*; *see also E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 Fed. Appx. 780, 786 (2d Cir. 2019) ("In contrast to a dilution claim under the Lanham Act, a state law dilution claim does not require that a mark be famous to be protected, but does require that the marks be substantially similar") (quotations and citation omitted).

**B.    Analysis**

***1. Patent Infringement Claims***

"[T]he test for design patent infringement consists of a single inquiry: 'whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design.'" *Wing Shing Prod. (BVI) Co. v. Sunbeam Prod., Inc.*, 665 F. Supp. 2d 357, 361 (S.D.N.Y. 2009) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*,

543 F.3d 665, 672 (Fed. Cir. 2008)).  The "ordinary observer" test for design patent infringement requires the fact finder to "compar[e] similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010)).  "The test for infringement also requires that 'an accused design be compared to the claimed design, not to a commercial embodiment.'" *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344-45 (Fed. Cir. 2020) (quoting *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993)).

Defendant argues that Plaintiff's patent infringement claims must fail because (1) the Movi Cocoon is plainly dissimilar from the claimed design of the '072 patent; (2) the '072 Patent design is functional and therefore invalid; (3) the '072 Patent is invalid and not enforceable because of prior art; and (4) the Keekaroo was not marked with the '072 Patent, and therefore Plaintiff is not entitled to damages for patent infringement.  *See* Dkt. No. 24-2 at 10-13.  Plaintiff contends that Defendant's arguments that the '072 Patent is invalid, and that Plaintiff failed to mark the Keekaroo, are improper at the motion to dismiss stage, and disputes Defendant's other arguments. *See* Dkt. No. 30 at 19.

First, Defendant argues that the Movi Cocoon "design is sufficiently distinct and plainly dissimilar from the 072 Patent design such that no reasonable factfinder could find infringement." Dkt. No. 24-2 at 12.  Defendant asserts that several features distinguish the Movi Cocoon from the '072 Patent, including that the "Movi Cocoon is *pear-shaped*, not peanut shaped," does not have an indented portion for the baby's head, has a much wider bottom section, and has a much shorter front wall than side walls, whereas the "front and side walls of the claimed design are uniform."  Dkt. No. 24-2 at 11, 16.  Additionally, Defendant argues that the "walls of the claimed

design have a wide flat top" whereas the "walls of the Cocoon have a thin, rounded top" which can be seen by looking at the sides of the claimed design and the Movi Cocoon.  *Id.* at 11.  The Movi Cocoon has a hollowed-out bottom with extra supports and a large, raised Movi logo covering more than half the bottom, whereas the claimed design of the '072 Patent has a flat bottom.  *See id.*  Defendant further asserts that some of the features which Plaintiff alleges the Movi Cocoon shares with the '072 Patent are "merely functional" and therefore "unprotectable design elements."  Dkt. No. 24-2 at 11.  According to Defendant, these items "are so plainly dissimilar that it is not plausible that an ordinary observer would confuse them."  *Id.* at 12.

Plaintiff argues that Defendant improperly compares individual features of the Movi Cocoon and the '072 Patent in an analysis akin to the novelty test which the Federal circuit rejected in *Egyptian Goddess* and does so prematurely at the motion to dismiss stage.  *See* Dkt. No. 30 at 14 (citing *Egyptian Goddess*, 543 F.3d at 678).  According to Plaintiff, although there may exist differences in the thickness of the side walls and the width of the bottom section, such differences do not "prevent a finding that the Movi Cocoon and the design of the '072 Patent share the same overall appearance."  *Id.* at 15.  Defendant argues that its focus on specific differences between the '072 Patent and the Movi Cocoon is proper because, under Federal Circuit precedent established in *Arminak*, the ordinary observer test requires comparing all views of the patent design and allegedly infringing product, "not simply those views a retail customer seeking to buy would likely see when viewing the product at point of sale."  *See* Dkt. No. 33 at 7 (quoting *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324 (Fed. Cir. 2007)).

The Court considers all views of the '072 Patent and the Movi Cocoon in making its determination about the overall impression.  *See Richardson*, 597 F.3d at 1295 (citing *Egyptian Goddess*, 543 F.3d at 681).  Although the complaint only includes one side-by-side comparison of

the '072 Patent and the Movi Cocoon, as referenced above, the Court inspected Movi Cocoons and Keekaroo changing pads provided by both parties during oral argument.  *See* Tr. at 18:1-13.

The parties also dispute the importance of the fact that the Movi Cocoon does not have a logo on the front, whereas the claimed design includes a logo on the front.  *See* Dkt. No. 30 at 16. Plaintiff claims that the bottom of the pad shown in the '072 Patent is "functional and not part of the design."  *Id.*  In applying the ordinary observer test, the Court considers "an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one.  Indeed, the fact finder is tasked with determining whether an ordinary observer would find the 'effect of the whole design substantially the same.'"  *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1131 (Fed. Cir. 2019) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 530 (1871)); *see also Lanard Toys Ltd.*, 958 F.3d 1337 at 1342 (holding that the district court "properly considered how each element, particularly non-functional and novel elements, impacts the overall appearance of the patented design" in comparison to the allegedly infringing product).  Although Defendant has identified several differences in design, including the large Movi logo on the bottom of the Movi Cocoon and the '072 front logo, Plaintiff has sufficiently alleged that an "ordinary observer" could be "deceived" by the Movi Cocoon because of overall visual effect and "'similarities in the overall design'" of the '072 Patent and the Movi Cocoon, "'not of similarities in ornamental features considered in isolation.'"  *Columbia Sportswear N. Am., Inc.*, 942 F.3d at 1131 (quoting *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)).

Second, Defendant contends that the "indented sides of the diaper changing pad design of the [']072 Patent are entirely functional to allow for a safety strap to be affixed and not slip" and therefore that aspect of the design is not protected.  *See* Dkt. No. 24-2 at 12.  Defendant asks the

Court to take judicial notice of an International Standard Consumer Safety Specification for Baby Changing Products for Domestic Use, which Defendant claims requires diaper changing pads to have straps. *See id.* Defendant argues that "Plaintiff has failed to allege how its claimed design is non-functional." Dkt. No. 33 at 8.

Plaintiff argues that, even if the side indentations have a functional purpose that "does not necessarily render the feature non-ornamental for design patent protection" and that "the indentations of the patented design exist independent of the strap because the strap is removable and the product is commonly used without the strap." Dkt. No. 30 at 8. According to Plaintiff, the indented sides are not essential to the purpose of the diaper changing pad, as evidenced by the fact that several other diaper changing pads on the market do not have side indents for a strap. *See* Dkt. No. 30 at 17-18; *see also* Tr. at 14:19-24, 16:1-17, 27:2-9.

"A design patent protects the non-functional aspects of an ornamental design as shown in a patent." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993) (citing *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188-89, 5 USPQ2d 1625, 1627 (Fed. Cir. 1988)). However, "a claimed design [is] not invalid as functional simply because the 'primary features' of the design could perform functions." *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1329 (citation omitted); *see also OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent"). "[W]hile the 'ordinary observer' test is not an element-by-element comparison, it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects." *Lanard Toys Ltd.*, 958 F.3d 1337 at 1343 (citing *Amini Innovation Corp.*, 439 F.3d 1365 at 1372). "Under the 'ordinary observer' test, a court must consider the

ornamental features and analyze how they impact the overall design." *Id.* (citing *Richardson*, 597 F.3d at 1295).

The Court therefore faces a situation where factors weigh on both sides of the functionality determination. Considering that Defendant bears the burden of proof against the presumption of non-functionality that accompanies a federally registered trademark, this factual issue cannot be resolved in Defendant's favor on a motion to dismiss. *See Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 301 (S.D.N.Y. 2010) (holding that the defendant moving to dismiss a claim for trademark infringement carried "the burden of proof against the presumption of non-functionality").

Third, Defendant's argument that the '072 Patent is invalid because it was anticipated by the Kuster Jelly Baby ("Jelly Baby") changing pad fails because "[a] party seeking to invalidate a patent on the basis of anticipation must do so by clear and convincing evidence." *High Point Design LLC v. Buyer's Direct, Inc.*, 621 Fed. Appx. 632, 638 (Fed. Cir. 2015) (citing *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288 (Fed. Cir. 2002)). Defendant claims that the Jelly Baby was "on sale by at least April 4, 2008, more than a year prior to the priority date of the '072 Patent." Dkt. No. 24-2 at 13. To assert that the Jelly Baby anticipated the '072 Patent design Defendant must show that the Jelly Baby is "identical in all material respects" to the '072 Patent. *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001) (quoting *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997)). The Federal Circuit has stated that "[a]nticipation is a question of fact" which is only properly resolved at summary judgment "when the evidence underlying anticipation is clear and convincing such that no

reasonable fact finder could find otherwise." *High Point Design LLC*, 621 Fed. Appx. at 638

(citation omitted).[2]

Fourth, Defendant's failure to mark argument likewise fails.  Whether Plaintiff "would not

be entitled to damages for patent infringement pursuant to 35 U.S.C. § 287(a)" as Defendant

argues, is not relevant to whether Plaintiff has plausibly alleged a claim for patent infringement.

Dkt. No. 24-2.  The Court accepts Plaintiff's allegations that the '072 Patent is valid and holds that

Defendant's arguments that the '072 Patent is invalid because it was anticipated and improperly

marked are improper at this stage.  Accordingly, Defendant's motion to dismiss the trademark

infringement claim is denied.

### *2. Trade Dress Infringement under Section 43(a) of the Lanham Act*

To prevail on a claim for trade dress infringement under § 43(a), the plaintiff must "(1)

offer a precise expression of the character and scope of the claimed trade dress; (2) allege that the

claimed trade dress is non-functional; (3) allege that the claimed trade dress has secondary

meaning; and (4) allege that there is a likelihood of confusion between the plaintiff's good[s] and

the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir.

2003)); *see also Eyal R. D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp. 2d 441, 448 (S.D.N.Y.

2011) (holding that "a plaintiff must establish that the trade dress is not functional").  "Although

whether a party has alleged trade dress entails the sort of factual review rarely conducted by

courts at the motion to dismiss stage, on a motion to dismiss, the party seeking to protect a design

must give adequate notice of what overall look it wishes to protect." *Digital Dream Labs, LLC. v.*

---

[2] Additionally, the Court may not consider Defendant's external link to an image of the Jelly Baby
at this stage because the Second Circuit has found that documents such as affidavits, photographs,
and other supporting materials are inappropriate to consider at the motion to dismiss stage. *See
Smith v. Hogan*, 794 F.3d 249, 251 (2d Cir. 2015).

*Living Tech. (Shenzhen) Co.*, 587 F. Supp. 3d 305, 327 (W.D. Pa. 2022) (internal citations

omitted).  When deciding a motion to dismiss, the "focus of [the] initial inquiry is limited only to

whether Plaintiff has identified a 'distinctive combination of ingredients that deserves protection.'"

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 278 (S.D.N.Y. 2018) (quoting

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

      With respect to the precise nature of the trade dress, the complaint describes the shape and

composition of the Keekaroo Trade Dress, as well as its overall look.  *See Int'l Leisure Prod., Inc.*

*v. Sunnylife Australia*, No. 16-CV-6215, 2018 WL 1305712, *5 (S.D.N.Y. Mar. 12, 2018).

Plaintiff identifies its trade dress as consisting of a middle portion that is indented on both sides,

rounded ends with one end being more elevated than the other end, raised edges along the longer

sides and one end, and a grey or vanilla color.  Dkt. No. 1 at ¶¶ 2, 44.  It alleges that the Keekaroo

Trade Dress is distinctive and "no other changing pad in U.S. commerce features the

characteristics typical of" the trade dress.  *Id.* at ¶ 46.  Plaintiff has extensively advertised its trade

dress such that it has "achieved secondary meaning in the marketplace." *Id.* at ¶ 41.  Plaintiff

alleges that the combination and arrangement of the "ornamental elements of the trade dress make

it distinctive and immediately identifiable to consumers, and [that] this design is distinctive and

an iconic brand, instantly recognizable."  Dkt. No. 30 at 21 (citing Dkt. No. 1 at ¶¶ 44-45).

Plaintiff also alleges that the Defendant's Movi Cocoon is made of inferior materials.  *See* Dkt.

No. 1 at ¶ 46.

      Defendant argues that the color cannot be part of the trade dress because the Keekaroo is

available in more colors than just grey or vanilla.  *See* Dkt. No. 24-2 at 16.  However, at the

pleading stage the Court construes factual disputes in favor of the plaintiff, who in this instance

claims to only offer the Keekaroo in grey or vanilla.  *See* Dkt. No. 1 at ¶ 44.[3]  Notably, all the case

law cited by Defendant in support of its argument concerns instances in which the plaintiff sought

protection for a line of products.  *See, e.g., Landscape Forms*, 113 F.3d at 381 (noting that "the

record fail[s] to indicate what unique combination of features makes the trade dress of the ten

items in the Petoskey line inherently distinctive"); *Nat'l Lighting Co.*, 601 F. Supp. 2d at 561

("Plaintiff's claimed trade dress involves product design and covers an entire product line").  A

plaintiff seeking to protect a line of products has a more difficult burden to demonstrate that the

appearance of several distinct products in a line is sufficiently "unique to merit protection as a

recognizable trade dress."  *Landscape Forms*, 113 F.3d at 381 (comparing trade dress claims for a

single product to trade dress claims for a line of products).  Here, Plaintiff seeks to enforce its

trade dress for a single product allegedly available in two colors.  At the pleading stage, Plaintiff

has adequately described the elements that make up its purported trade dress.  The focus of this

initial inquiry is limited only to whether Plaintiff has identified a "distinctive combination of

ingredients [that] deserves protection."  *Landscape Forms*, 113 F.3d at 381.  It has.

With respect to whether Plaintiff has alleged the trade dress is nonfunctional, the trade

dress would only be considered functional "if the right to use [the trade dress] exclusively would

put competitors at a significant non-reputation-related disadvantage."  *Yurman Design, Inc. v.*

*PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001).  Defendant argues Plaintiff's allegations that the trade

dress features are not functional are conclusory and "legally insufficient."  Dkt. No. 33 at 11.

Defendant further argues that the most prominent feature of the Keekaroo design, the indented

---

[3] At oral argument Plaintiff admitted that the Movi Cocoon was previously manufactured in more colors than just grey and vanilla.  *See* Tr. at 7:2-18.  However, whether the grey and vanilla colors are a viable element of the Keekaroo Trade Dress is a factual question which is inapposite at the pleading stage.

sides, is purely functional.  *See* Dkt. No. 24-2 at 19; *see also* Tr. at 14:2-16.  However, it is improper for Defendant to break the trade dress down into specific elements and call them functional because Plaintiff's claim is that the combination and arrangement of those design elements comprise the trade dress at issue.  *See Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 620-21 (2d Cir. 2008).  That the design features perform a function is not dispositive "because the ultimate test is whether the feature is dictated by the functions to be performed" and at this pleading stage Plaintiff has adequately alleged that it was not.  *Id.* at 621 (holding that "[a]lthough the design of the [product] does operate to perform a function, the trade dress is not 'functional' because there are many alternative designs that could perform the same function").

With respect to the third element, as Plaintiff notes in response, Defendant does not dispute that Plaintiff has adequately pleaded that the Keekaroo Trade Dress has acquired secondary meaning.  *See* Dkt. No. 30 at 25.  Plaintiff has alleged that its extensive advertising has led to public recognition of the trade dress such that it has acquired secondary meaning.  *See* Dkt. No. 1 at ¶¶ 27, 41.

With respect to the fourth element, courts in the Second Circuit assessing the likelihood of confusion between Plaintiff's goods and Defendant's consider "the *Polaroid* factors" articulated by Judge Friendly in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  *See City of New York by & through FDNY v. Henriquez*, 98 F.4th 402, 410 (2d Cir. 2024).[4]

---

[4] The *Polaroid* factors are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the plaintiff's and defendant's marks; (3) the competitive proximity of the products sold under the marks; (4) the likelihood that the plaintiff will bridge the gap; (5) actual confusion; (6) the defendant's good faith, or lack thereof, in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the plaintiff's customers. *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *see also Polaroid*, 287 F.2d at 495.

Defendant argues that "[t]he Movi Cocoon is different in so many ways from the Keekaroo that it could not be found to have used Plaintiff's alleged trade dress." Dkt. No. 24-2 at 16. Defendant points to several differences between the Movi Cocoon and the Keekaroo, including the width at the foot end, the slope from one end to another, the thickness of the sides, the colors available, and the bottom of the pads, which is hollowed out with a large logo on the Movi Cocoon but flat and unmarked on the Keekaroo. *See id.* at 17. Defendant argues that the *Polaroid* factors "are not to be applied mechanically" and that Plaintiff has not alleged there is a "'probability of confusion.'" *Id.* at 18 (quoting *Playtex Prods. Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 161 (2d Cir. 2004)); *see also* Dkt. No. 33 at 10.

Defendant's argument is inapposite at this pleading stage, as the Court only inquires as to whether Plaintiff has plausibly alleged some of the relevant factors, not whether the balance of factors weighs in favor of finding a likelihood of confusion. *See Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 55-56 (S.D.N.Y. 2015) ("Plaintiff need not 'prove' confusion at the motion to dismiss stage. On the contrary, '[l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss'") (quoting *Van Praagh*, 993 F. Supp. 2d at 303) (other citations omitted). Plaintiff has alleged that the overall appearance of the Keekaroo is such that consumers are likely to confuse the Keekaroo and the Movi Cocoon, which are the same type of goods. *See* Dkt. No. 1 at ¶¶ 44, 46. 74. This suffices to support an allegation of consumer confusion at this stage of the proceedings. Accordingly, Plaintiff has adequately alleged a claim for infringement of the Keekaroo Trade Dress.

### 3. State Law Claims

Defendant argues that Plaintiff's state law claims are preempted because Plaintiff has not pleaded a violation that is "separate and independent from its patent law claims[.]" Dkt. No. 24-2

at 20 (citing *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998)).

Plaintiff asserts that its unfair competition claims are "not preempted by either patent claims or

trade dress infringement claims under the Lanham Act" because "state unfair competition claims"

and "patent claims . . . coexist independently to address different legal issues." Dkt. No. 30 at 26-

27. The question for the Court is whether Plaintiff's claims are preempted as pled.

"Federal Circuit law governs whether federal patent law preempts a state law claim."

*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). A state law

claim is preempted if it "'stands as an obstacle to the accomplishment and execution of the full

purposes and objectives of Congress.'" *Id.* at 1377 (quoting *Aronson v. Quick Point Pencil Co.*,

440 U.S. 257, 262 (1979)). "[P]atent law will not preempt state law claims if such claims 'include

additional elements not found in the federal patent law cause of action and if they are not an

impermissible attempt to offer patent-like protection to a subject matter addressed by federal

law.'" *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 328 (E.D.N.Y.

2014) (quoting *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999)).

### a. Unfair Competition

"Under New York law, an unfair competition claim encompasses a broad range of unfair

practices." *Id.* (citing *American Footwear Corp. v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d

Cir. 1979)). "[T]he essence of unfair competition under New York law is 'bad faith

misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive

purchasers as to the origin of the goods.'" *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F.

Supp. 3d 245, 286 (S.D.N.Y. 2016) (quoting *Rosenfeld v. W.B. Saunders*, 728 F. Supp. 236, 249-

50 (S.D.N.Y. 1990)) (internal quotation marks and other citation omitted).

Because Plaintiff has plausibly alleged trade dress infringement and patent infringement, the only remaining question is whether Plaintiff adequately pled that Defendant acted in bad faith. *See Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12-CV-5105, 2014 WL 3950897, *9 (S.D.N.Y. Aug. 13, 2014) ("Because we have found that defendants have stated a claim for unfair competition under Section 43(a), the only remaining question is whether defendants have adequately pled that plaintiff acted in bad faith"); *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012) (noting that "a plaintiff asserting an unfair competition claim under New York common law must also show that defendant acted in bad faith").

Defendant argues that Plaintiff's allegations of Defendant's "bad faith" are "conclusory" and "fail to identify specifically the alleged wrongful conduct undertaken by [D]efendants apart from alleged patent infringement" and therefore are insufficient to establish a plausible claim. Dkt. No. 24-2 at 21. Although Plaintiff argues that it has "more than sufficiently pleaded all required elements to claim infringement," it has not pleaded wrongful conduct beyond facts constituting patent infringement for its state law claims and does not describe tortious conduct sufficient to establish the bad faith element for a cognizable claim. Dkt. No. 30 at 27. The only allegation of bad faith in the complaint is the bare assertion that "Defendant has willfully and blatantly designed the Infringing Movi Cocoon to unfairly capitalize on the goodwill and reputation of Plaintiff's changing pad and unabashedly profit from its bad faith infringement" by unfair means. Dkt. No. 1 at ¶ 5. Plaintiff's claim is conclusory, fails to identify specifically the alleged wrongful conduct undertaken by Defendant, and is insufficient to establish a claim of unfair competition under New York law. *See Twombly*, 550 U.S. at 570 (holding that a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")

(internal quotation marks and citations omitted); *see also CDC Newburgh Inc.*, 2023 WL 6066136 at \*14 (holding that the plaintiff's allegations that "Defendants have acted with fraud, malice, and willful and wanton conduct" and "willfully intentionally, maliciously, and in bad faith infringed on the . . . Trademarks" were "wholly conclusory"); *Carson Optical, Inc.*, 11 F. Supp. 3d at 330-31 (dismissing unfair competition claim where allegations were "conclusory, [and] fail to identify specifically the alleged wrongful conduct undertaken by [the] defendants apart from patent infringement, constitute a boilerplate recitation of an unfair competition cause of action, and thus are insufficient to establish a plausible claim of bad faith misappropriation under New York law"); *Champion Labs., Inc. v. Parker–Hannifin Corp.*, No. 1:10-CV-02371, 2011 WL 1883832, \*14 (E.D. Cal. May 17, 2011) (dismissing unfair competition claim where allegations were "conclusory, incomplete" and failed to plead facts to "appropriately identify with particularity the conduct undertaken by [defendant] that violates unfair competition laws").  Plaintiff's unfair competition claims fail due to the absence of allegations of additional tortious conduct that is separate from the patent law causes of action.  *See Carson Optical, Inc.*, 11 F. Supp. 3d at 329.

Plaintiff's allegations of Defendant's bad faith are premised on the unlawful copying, misappropriating, and stealing of the '072 patented design and are thereby insufficient to transform the nature of these claims from patent infringement to an independent common law claim of unfair competition.  *See id.* at 331.  Such a claim is preempted because it is the functional equivalent of Plaintiff's patent infringement claims.  *C.f. Adina's Jewels, Inc. v. Shashi, Inc.*, 442 F. Supp. 3d 766, 772 (S.D.N.Y. 2020) ("the Copyright Act preempts unfair competition claims 'grounded solely in the copying of a plaintiff's protected expression'") (quotation omitted).[5]

---

[5] "Although patent and copyright law function somewhat differently, courts considering one have historically looked to the other for guidance where precedent is lacking." *John Wiley & Sons, Inc.*

### b. Common Law Trademark Infringement

Plaintiff alleges that the design of the Movi Cocoon supports its common law causes of action based on allegations that Defendant infringed upon the '072 Patent and protected trade dress affiliated with the Keekaroo.  Defendant argues that Plaintiff's claims are preempted because "Plaintiff has not pled conduct in violation of state law that is separate and independent from its patent law claims[.]"  Dkt. No. 24-2 at 20.

"The standard for proving trade dress infringement under New York common law generally parallels the standard under the Lanham Act, except that there is no requirement to show secondary meaning for distinctive designs." *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684, 2019 WL 1517552, *4 (S.D.N.Y. Apr. 8, 2019) (quoting *Cartier, Inc.*, 348 F. Supp. 2d at 250).  Plaintiff's allegations are preempted by federal patent law because they are predicated upon Plaintiff's claims that Defendant's Movi Cocoon infringed Plaintiff's design patent without any additional allegations.  *See Hunter Douglas*, 153 F.3d at 1335 ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law"); *see also Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964) (holding that state law claim for unfair competition cannot be applied to "give protection of a kind that clashes with the objectives of the federal patent laws"); *see also Eyal R.D. Corp.*, 784 F. Supp. 2d at 446 (quoting 17 U.S.C. § 301) ("The Copyright Act preempts a state law claim that protects 'legal or equitable rights that are the equivalent to any of the exclusive rights within the general scope of copyright as specified'").

---

*v. DRK Photo*, 998 F. Supp. 2d 262, 291 n.23 (S.D.N.Y. 2014) (quoting *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007)) (citations omitted).

### c. Injury to Business Reputation under N.Y. Gen. Bus. Law § 360-l

N.Y. Gen. Bus. Law § 360-l provides for the possibility of injunctive relief in cases of trade dress infringement and unfair competition where there is likelihood of injury to business reputation from "dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360-l. Dilution can occur "in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. Law § 360-l. The Second Circuit has defined dilution "as either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-43 (2d Cir. 1994) (internal quotation marks omitted).

Plaintiff has alleged ownership of the '072 Patent and ownership of the trade dress for the Keekaroo. *See* Dkt. No. 1 at ¶¶ 14, 18-22. Plaintiff has further alleged that "Defendant's imitation, copy, and reproduction of Plaintiff's [Keekaroo] Trade Dress has injured Plaintiff's business reputation" because it "creates confusion as to the source and origin of Defendant's" Movi Cocoon, and trades off the distinctiveness of Plaintiff's Keekaroo. *Id.* at ¶¶ 88-89.

Accepting these allegations as true, the Court finds that Plaintiff has plausibly suggested that Defendant's sale and marketing of the Movi Cocoon has diluted Plaintiff's business name and reputation. As a result, Defendant's motion to dismiss Plaintiff's claim for injury to business reputation under § 360-l of New York General Business Law is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

ORDERS that Defendant's motion to dismiss (Dkt. No. 24) is **GRANTED in part** and

**DENIED in part**[6]; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 25, 2024
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[6] Plaintiff's claims survive this motion with the exception of the New York claims for unfair competition and trademark infringement.